May it please the court, counsel. For the record, I'm Jane Kirk, appearing on behalf of the United States in this matter, and I would like to reserve five minutes for rebuttal. The government is here seeking reversal of the district court's dismissal of the indictment in this matter. The indictment was dismissed based upon a case out of this court, United States v. Fiander, in which an Indian's treaty right to travel precluded a prosecution of a Yakima Indian based on a failure to pre-notify the state that he would be transporting unstamped untaxed cigarettes, unreported cigarettes. Unreported cigarettes, let me get that clear. And the district court dismissed saying that Smishkin said that what Mr. Fiander was doing in this matter was legal. But the district court failed to realize that in the Smishkin opinion, this court said that the cigarettes being transported were in fact contraband. So once the cigarettes are contraband, they cannot be sold. They are, they must, they are subject to seizure and forfeiture. So those cigarettes were contraband. Mr. Fiander knew that those were contraband. He delivers them to the, to the smoke shops on the Yakima reservation. And let me just go back. Do they become contraband because notice hasn't been given? Yes. So I found myself kind of going in a circle on that point, because if they're contraband solely because there's no notice, and they're not required to give notice because of the treaty, then are the cigarettes not contraband? That's what I'm saying, yes. And I think you need to go back to the Smishkin opinion, and the Smishkin opinion is more limited than Mr. Fiander would ask it to be. It says that the Smishkin opinion says you may not prosecute a Yakima Indian under the CCTA based upon a failure to pre-notify. That's all it says. And the Smishkin opinion also does recognize that those cigarettes are contraband. So once contraband cigarettes are delivered to the smoke shop owners, then contraband cigarettes are being sold. And Mr. Fiander knew that because he knew that they were contraband cigarettes. Therefore, any of the funds coming back from those sales would be illegal funds from a specified unlawful activity. And Mr. Fiander delivering those funds back to the smoke shop, the wholesaler in Idaho is money laundering. Can I just get the player straight? Not everybody here is a tribal member, or are they? A member of some tribe? John Hunter was not a tribal member. He was married to a tribal member, though, to a Yakima tribal member. So you could consider him an employee and therefore covered by the Yakima umbrella. All right. So all the people alleged in the co-conspiracy under RICO were tribal members? Yes. But that could lead the court into thinking that all these transactions should be covered by the Indian right to sell untaxed cigarettes. However, in Colville, the Supreme Court said that that right only goes to selling those cigarettes to members of your own tribe. So that the seller in Idaho was not a Yakima member. He was a Coeur d'Alene tribal member. So there are two different tribes here. Right. So the sale cannot be covered by that exception, which would say that if you sold to a member of your own tribe, it can be untaxed. But it was a sale from Louie Mahoney to the Davises on the Yakima reservation. And the cigarettes were transported by Mr. Fyander. You see, that seems to me a different question. I know in Colville they were looking at taxation within a particular reservation or within a particular tribe. But they're not charged here, he's not charged here with a taxation violation, is he, but with a notice? I mean, the conspiracy is the failure to notify? The conspiracy is the sale of contraband cigarettes. And the sale occurred on the Yakima reservation. And because those cigarettes And they came from Idaho. Idaho, right. So the cigarettes are transported from Idaho to the Yakima reservation. They are sold on There's no way to un-contraband them once the, you can't un-ring that bell. So, and Mr. Fyander knows that they're contraband, and he knows that their ultimate sale is in, contravenes the Contraband Cigarette Trafficking Act. For what reason? Because why does it contravene the act, the sale? Because the cigarettes were contraband. They were not reported to the state, so they are contraband. And they cannot be sold. They, the only It doesn't matter whether they're sold to Indians or to non-Indians. Correct, Your Honor. Because, and the only cigarettes that can be sold are cigarettes that have a Washington State stamp on them. Tax paid or tax exempt stamp. These cigarettes did not have any of those because they were contraband. So the cigarettes that are sold on the Yakima Nation are contraband, and the funds gathered from those sales are for an illegal activity. So the transporting of those funds back to Mr. Mahoney is money laundering. And this is all a legal conspiracy. And under Baker, a conspiracy, even though an act could be a legal act, you could still be liable for the conspiracy in Baker. The Montana defendants Let me ask you this. If the defendant here not only transported the cigarettes, but he himself sold them on the reservation, would he be liable? Yes. Well, it seems to me that Smishkin went beyond simple transportation and talked about a transaction, that the transaction would also be immune from prosecution. Your Honor, I would, I'm not aware of where in Smishkin it says that. Smishkin says that it is simply whether, let's see. The transportation force, it says the CCTA is not intended to affect transportation or sale by Indians or Indian tribes acting in accordance with legally established rights, whatever that means. And that's one place. Then later, it also talks about transportation for sale. We refuse to draw what would amount to an arbitrary line between travel and trade in this context, holding as the government suggests that the Yakima Treaty does not protect the commerce at issue. Then it says thus, whether the goods at issue are timber or tobacco products, the right to travel overlaps with the right to trade under the Yakima Treaty, such that excluding commercial exchanges from its purview would effectively abrogate our decision in Cree. Your Honor, I believe that what Smishkin was talking about, in that appeal, I was trying to argue that I was trying to distinguish the Cree decision. And this Court said no, if it's, even if it is a transportation of goods, the Cree decision will apply. I was trying to say that. Well, that says to Cree. And before that, it says, finally, it found that the treaty was clearly intended to reserve the Yakima's right to travel on the public highways to engage in future trading endeavors. It seems to me the opinion throughout seems to say that if this were an individual who was transporting these cigarettes on a highway for sale, that the entire transaction would be immunized, not just the movement in the truck, but the sale at the end of that movement. Your Honor, I don't read Smishkin that way. I read Smishkin as saying that you have a right to travel and that the CCTA, violation of the CCTA cannot be premised upon that travel right if it is impinged by the CCTA. Isn't that exactly his question to you, though? In other words, that if Feeander had also, by himself, you know, besides transporting, sold the cigarettes, he couldn't be prosecuted under the CCTA, could he? Well, I understand where the Court's going with that, and I would respectfully disagree. I think that the treaty right is a treaty right to travel. It's not also a treaty right to sell. And it's just saying it's – Smishkin just says these are contraband cigarettes, and you cannot prosecute him for having those contraband cigarettes because you're premising it on a violation of the treaty, and the treaty is a treaty right to travel. What was Smishkin doing? Smishkin was transporting cigarettes from Idaho over to western Washington, and he had stopped for the night at his house on the Yakima Reservation. For sale? No. Well, yes, the cigarettes were going to be for sale, but Mr. Smishkin did not own the cigarettes at any time. But he – what he did wrong, supposedly, he didn't tell the State of Washington that he was going from Idaho to Washington with these cigarettes, right? That's correct. And isn't that essentially what Mr. Fander does here? He doesn't tell the State of Washington that he has these cigarettes in his car? Yes, that's correct. So he's exactly like Mr. Smishkin? Well, he is exactly like Mr. Smishkin up to the point then he turns them over to Mr. Hunter and Mr. Davis, and Mr. Hunter and Mr. Davis sell the cigarettes without notifying the State of – well, they sell the cigarettes, which are contraband. Okay. Well, that gets me, I guess, to my question where I sort of started this in that weird thing with conspiracies where you can be held liable in a RICO conspiracy even if you couldn't be held liable for the underlying predicate act. Correct. Which is one of these counterintuitive principles. But nonetheless, that seems to be what the cases say. Yes. So I guess going to that, why do we need all – if we were to look at it from that perspective, why would we need all this discussion about whether or not he could be held liable or not? I don't think we need that discussion, whether or not he could be held liable. Liable under the CCTA. Right. And then it raises another question that seemed to me would be left unanswered, and she can – if that's true in normal RICO law, does it change once you have an Indian tribe if to put that principle in play would really run smack into the treaty problem? I don't think it changes because the treaty issue is – the treaty provision is a right to travel. It doesn't say anything about selling items on the reservation. Okay. So his – so would you articulate again what you think – well, not what you think, but I mean what is the charge of the conspiracy in which he is engaged? What are the parameters of that? That there are – there are sales of contraband cigarettes on the reservation, and Mr. Feyender provided the cigarettes for those sales, knowing that the sales would occur of contraband cigarettes. He also took the funds from those sales, which were specified on lawful activities, and transported those funds back to Louie Mahoney. So that's the money laundering. And I understand that the court is concerned or – Does the indictment charge of money laundering, is it like a predicate act? No. As a predicate act. There was a money laundering conspiracy charge also. So that's separate from the RICO conspiracy. Yes. Is that what you're saying? Yes. And that got sidelined? Yeah, but the only count he pled to was the RICO conspiracy. Yes, Your Honor. And after that, it was dismissed. And the whole indictment was dismissed, Your Honor. So it really comes down to the – if the conspiracy for money laundering is a separate count that was dismissed pending the ability to appeal on this, this comes down to a predicate act of sale of contraband cigarettes? Yes. Yes. That is the predicate act. For what? For the RICO conspiracy? For the RICO conspiracy, for the contraband cigarette trafficking act conspiracy, for the money laundering conspiracy. So let's take the individuals – I guess they would be on the Yakima Reservation who accepted the cigarettes and then sold them. Yes. And they had come from a member of a different tribe. Yes. Not from outside the reservation. Those individuals could be charged with the predicate act or no. Yes. And I understand the court being – well, here's Mr. Fyander transporting contraband cigarettes and he cannot be prosecuted based on the failure to pre-notify. But he can be prosecuted even though those cigarettes are protected by the treaty while they're in transit. Then once they're sold, that protection of the treaty falls away. Well, suppose – we disagree with you – that the right to travel doesn't end when you reach the end of the road. And the rest of that sentence I read to you was – and you distinguish it because it was Cree. The rest of the sentence was, thus whether the goods had issued a timber or tobacco product, the right to travel overlaps with the right to trade under the Yakima Treaty such that excluding commercial exchanges from its purview would effectively abrogate a decision in Cree and render the right to travel provisions totally impotent. Now, assume that we said that the right to travel is intermixed with the right to trade and that the defendant here did have the right not only to travel but to sell the cigarettes when he arrived. What would the answer be if that were the case? If he had the right to trade, then you would extend Shmishkin's treaty right that would immunize him from prosecution under the CCTA. And what about under RICO? And under RICO also. A conspiracy is a conspiracy is a conspiracy, whether it's a RICO or another. I don't believe that that would change it at all. I'd like to save a little bit of time for rebuttal, please. You may. Okay. May it please the Court, Your Honor. Jack Fyander representing the appellee, Roger Fyander. I guess to start with, I'd like to just address you about what I think really happened in this case, which is that in May of 2005, the district court in the Shmishkin case dismissed that indictment as to the Shmishkins for transporting and possessing contraband cigarettes. In August of 2005, Mr. Fyander, whom we believe was engaged in essentially the same conduct, was indicted, but there were additional charges, money laundering, RICO, in addition to conspiracy to violate the Contraband Cigarette Trafficking Act. I would submit that just on background, that was merely an attempt to try to distinguish Shmishkin by adding in some additional charges to get the case back before you. Now, in April of 2007, Mr. Fyander did reach a plea agreement regarding one count of RICO, but we would submit that throughout the indictment, the underlying premise and predicate offense for all of this was the Contraband Cigarette Trafficking Act. Less than a month later, in May 2007, the Ninth Circuit issued its opinion in Shmishkin, and the court on its own motion, the district court, sua sponte, said, I'm dismissing the indictment based on Shmishkin. So to take it from there, we would completely disagree with the government's references that these were contraband, or that Mr. Fyander knew they were contraband. I mean, I'm looking at an excerpt from the Shmishkin decision, and it says, the district court determined that the state's pre-notification requirement, as applied to Yakima tribal members, did indeed violate the treaty, and therefore that the unstamped cigarettes that the Shmishkins allegedly transported could not be considered contraband within the meeting of the CCTA. Now, the government would convince you that these were contraband cigarettes, and that the defendant merely could not be prosecuted, because the treaty insulated them against prosecution. But if you look at the Shmishkin decision, what it actually says is that because of the treaty right to travel for purposes of trade and engage in commercial exchanges, these were never contraband. On the facts of this case, Mr. Fyander was a mere transporter. His conduct was to travel to Idaho at the request of his tribe to purchase, or to pick up cigarettes that had been purchased there. Now, in Idaho, there's no cigarette tax. So he picked up those cigarettes, transported them back to the Yakima reservation, consistent with his treaty right to travel. He didn't sell any cigarettes. He merely delivered them to other members of the Yakima tribe. What they did with them was beyond his knowledge, and I would submit beyond the allegations of the indictment. Well, whether they're beyond his knowledge or not, isn't that a question of fact? I mean, I don't know that it matters, but you say that... You know, I don't know that it matters whether he merely delivered them to other tribal members who sold them or whether he sold them himself, which he didn't. I read Smiskin because you've got to adopt a construction that favors the treaty and favors the tribal member and favors the accused. I read Smiskin that it may insulate that final exchange, that sale by the tribal retailer, out the window. Well, what does that do if you don't... Cigarettes have to get to a place to be sold unless they're manufactured on the reservation. And if that's the case, if your reading is correct, then I guess the state of Washington and others could just say goodbye to their taxation system for, at least as to cigarettes sold on the reservation, no matter where they came from or even if the source were a different tribe, correct? Correct. So in other words, under your view of Smiskin, you basically would never have a prosecution for untaxed cigarettes. Right, under that broad reading, because that's part of the commercial exchange and that's consistent with the whole history that the court... And how would that, though, mesh with Colville? Well, it would be different from Colville, because Colville didn't involve treaty issues. It involved a suit brought by the tribe saying that you can't make us collect the state tax on sales by our retail outlets because of our tribal sovereignty. And the Colville court said, well, that's a minimal intrusion on tribal sovereignty. If you're making a sale out to the window to a non-tribal member, that retailer, it's a minimal intrusion on sovereignty to collect that tax. It didn't involve any treaty issues. And I think the treaty, Smiskin, and the district court decision in this gentleman's case was a separate analysis than intrusion on sovereignty. What the district court seemed to ignore, I think, getting back to the point Judge McKeown made with Ms. Kirk, is that what about the case law that says a person can be prosecuted for a RICO conspiracy even though that person doesn't commit the underlying act, which in this case would be a transportation of a contraband cigarette? What do you do with that case law? Well, I'm not sure that directly applies in the treaty context. I think you've got a couple of problems there because Mr. Feyender was just basically a delivery boy. Well, he's charged with being a member of this conspiracy, right? Right. Involving a whole lot of other people. Right. And at one point he pleaded guilty to it. Yeah, he entered a plea agreement. Which preserved his right to appeal. But he knew what was going on. He knew there was this agreement. He knew he was part of this overall organization. And these other people could be liable for violating the CCTA, right? Well, I don't think that's consistent with what Judge Whaley found because Judge Whaley found that... But Judge Whaley ignored some of the... Isn't that a question of fact, what his knowledge was limited to? Right, but I think his knowledge, you know, what the government can put on or prove of that is limited by the indictment. And I don't think the government alleged that he had such knowledge. Mr. Feyender had no knowledge ultimately to whom those retailers sold the product. For all he knew, they could have been sold to tax-exempt tribal members. And I would think that under those circumstances there is no taxable event until there is a sale for the notification requirement of the CCTA to apply. And until at the least there's a sale out the window to a non-tribal member. And I suppose that's a different case under those circumstances. I think you could say it falls under the Colville decision. Perhaps that retailer who is now engaging in a taxable event, deliver of untaxed cigarettes to a non-tribal member, that person may be subject to prosecution. Let's say then that you have peyote or something that... A form of peyote that was marijuana that was illegal under state law. But for religious and custom purposes, say the Warm Springs tribe, use this particular substance. If I understand your argument correctly then, a tribal member could transport that substance across the highway and sell it without any prosecution based on your reading of the treaty under submission. No, I wouldn't read it that way. He's asking where we end. I'm thinking if you go back to say the Cree decision, this circuit said that according to the treaty, yes, they have the right to engage in this travel without state licensing and state vehicle tax requirement. But it's just like in the fishing cases to a certain point where the state has an interest, say, in conservation, the state can limit or regulate, or the government can, the exercise of that right to preserve the public roads. I would say that in this case, we're talking about two different things. Cigarettes aren't prohibited in themselves. They are regulated. Like the equivalent to liquor, in other words. Oh, right, they're regulated. They're licensed and regulated and taxed. They're not prohibited. I think illegal psychotropic substances, I think that's a different situation. that there would be the governmental interest in prohibiting transport of, oh, I guess you'd say products that are malum and say, or malum, that they're not just regulated, they're prohibited. So I think that would clearly be a. Your argument would apply to liquor, for example, if you took liquor from one state to another and transported it to a reservation or to a tribal member. Would it be the same analysis as cigarettes? No, not at all, because there are federal statutes that prohibit liquor in Indian country. So there's already a prohibition on that, introducing intoxicants into Indian country. So, again, that would be, as to Indians in Indian country, liquor is still prohibited. How about fireworks? Would it apply to fireworks? It depends on how you characterize fireworks, whether they're merely regulated or whether they're prohibited. And, for example, in this state, certain types of fireworks are allowed. Certain types other aren't. So a little tougher question whether, even though the state calls that conduct prohibited, it could still be determined to be, it's merely regulated. A little different situation. But cigarettes are clearly regulated, we would submit. And I'm yammering on. Have you got any other questions? I think the government has attempted to distinguish the Smiskin decision by throwing in a money laundering charge. But as stated, we don't know to whom those cigarettes were ultimately sold, nor is that alleged in the indictment. Roger Finder was merely a delivery person. I don't see how you can prosecute him consistent, without rendering the treaty meaningless for money laundering, when the money laundering is carrying the money. Money laundering isn't in this case now, is it? As I understood your answer to Judge McKeown previously, or your opponent's answer, that's been dismissed as part of the plea agreement. Yeah, but I think the money laundering and the contraband cigarette trafficking are all rolled into this RICO violation. I mean, he's got to be able to carry money to pick up the product, because the treaty has got to be interpreted so it has effect today. And you can't expect him to carry furs and pelts to Idaho to get cigarettes, and that's the only way to insulate him from this situation. Have you got any more questions? I know there's a lot to go through there. Thank you. I would ask you, just to follow this, the Ninth Circuit decision from 1995 in Baker, and they pretty clearly said that if the underlying predicate violation is contraband cigarette trafficking, that's at the heart of it. All the other charges in the dismiss fall also when that one falls. Thank you. Thank you. I have one question for you. Okay. If your theory is upheld, is there anything left of Smishkin? Not as long as the government charges conspiracy. So Smishkin really doesn't mean anything, because the government can always charge conspiracy. Yes. Well, Smishkin means that you can be insulated from prosecution just based on the underlying CCTA, but it doesn't mean that you can be insulated from a conspiracy. It afforded no protection or meaning to the treaty, although it thought it did. I mean, what Smishkin was about and what it said is, you know, without this decision, you're really undermining the treaty, and it doesn't accomplish its purpose. And so the government found another way to do that by instead of just charging a simple violation under that statute, they said, well, okay, then we'll call it a conspiracy. I believe that that's the end result. I'm not saying that that's what the government thought. Unless you're a one-man show or a one-person show, like you transport, sell, set up shop and everything, and the only person you deal with then is the ultimate customer, I guess, you will always charge for RICO conspiracy, right? Right. And even if Mr. Feinder set up shop, I think once the transportation stops, that that could be a violation of the CCTA when he sells those contraband cigarettes. And I understand the court's concern that this is a treaty right without a remedy, but I think in Oklahoma Tax Commission v. Potomotomy, where the state was saying, gee, we can't reach the tribe to collect the taxes that are due for the sales to the non-Indians, non-tribal members, and the Supreme Court said that sometimes you have a right without a remedy. And I think that this is the case, that you may have a travel right to transport contraband cigarettes, but there's no remedy to it. Let me ask you, look back at the Smishkin, and do you think now, with what you know, given the facts of that case, you could have charged RICO conspiracy in that case? Yes. Not RICO, CCTA conspiracy. So you think the CCTA conspiracy would work just as well in getting around the treaty? Yes. I wouldn't use those words, getting around the treaty. I just think that the treaty doesn't extend that far. To immunize from a conspiracy. Right. That's correct. Thank you. Thank you very much. Well, that was an interesting argument. The case is arguably submitted. Next case for argument, United States v. Juvenile.
judges: Reinhardt, Tashima, McKeown